IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRANDON T. HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CASE NO. 1:19-cv-627-SRW |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**[1]

### I.   Introduction

Plaintiff Brandon Hayes commenced this action on August 30, 2019, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of benefits, social security disability ("SSD"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"). *See* Doc. 1; Doc. 14. Plaintiff filed his applications on May 11, 2016, alleging that he became disabled on July 1, 2009. *See* Doc. 16-5 at 2-20. Plaintiff's applications were denied at the administrative level. Doc. 16-4 at 2-13. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Doc. 16-4 at 16-17. On September 5, 2018, ALJ Laura Robinson issued an adverse decision after holding a hearing on plaintiff's

---

[1] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed at the administrative level. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

applications. Doc. 16-2 at 22-24. The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. *See* Doc. 16-2 at 2-5; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, plaintiff asks the court to reverse the Commissioner's decision and award benefits or, in the alternative, to remand this cause to the Commissioner under sentence four of 42 U.S.C. § 405(g). *See* Docs. 1 at 2; 14 at 23. This case is ripe for review pursuant to 42 U.S.C. §§ 405(f) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 6, 7. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be reversed and remanded for additional proceedings.

## II.     Standard of Review

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was

not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national

---

[3]*McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

### III.   Administrative Proceedings

Plaintiff was 25 years old at the time he filed his applications for benefits and was 27 at the time of the ALJ's decision. Doc. 16-2 at 30; R. 29, 40. Plaintiff is a resident of Geneva, Alabama, and lives in a house with his mother and father. *Id.* at 42; R. 41. Plaintiff completed school through a diploma program in graphic design. *Id.* at 43; R. 42.

Plaintiff claims that his ability to work is limited by partial blindness in his right eye, asthma, atopic dermatitis, and skin allergies. *See id.* at 43-44; R. 42-43. The only job previously held by plaintiff was that of a part-time program specialist at a daycare center taking care of children, which he held from 2007 to 2009. *Id.* at 43, 52-53; R. 42, 51-52.

Following the administrative hearing, and employing the five-step process, the ALJ found at step one that plaintiff had "not engaged in substantial gainful activity since July 1, 2009, the alleged onset date." *Id*. at 27; R. 26. At step two, the ALJ found that plaintiff suffers from the following severe impairments: "keratoconus, corneal dystrophy, history of subluxation of right lens status post repair, history of right retinal detachment status post

repair, atopic dermatitis, and asthma." *Id*. At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id.* at 28; R. 27. Next, the ALJ articulated plaintiff's RFC as follows:

> the claimant has the residual function capacity to perform medium work as defined in 20 CFR 202.1567(c) and 416.967(c) except for the following limitations. The claimant cannot perform commercial driving. He cannot perform tasks requiring excellent visual acuity such as that required for working with very small items such as beads or threads, or reading fine print. The claimant cannot work at heights or hazards. The claimant needs to work indoors in a climate controlled environment. He must avoid concentrated exposure to extreme temperatures, humidity, wetness, and pulmonary irritants.

*Id.*; R. 27. At step four, the ALJ concluded that that plaintiff "has no past relevant work." *Id.* at 30; R. 29. At step five, based on the plaintiff's RFC, age, education, work experience, and the testimony of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 31; R. 30. Accordingly, the ALJ determined that plaintiff "has not been under a disability . . . from July 1, 2009, through the date of this decision[.]" *Id.* at 32; R. 31.

### IV. Issues on Appeal

Plaintiff raises four issues on appeal, arguing that the Commissioner's decision is not supported by substantial evidence because (1) the Appeals Council failed to consider new material and evidence, (2) the ALJ failed to consider listing 8.05 for atopic dermatitis properly, (3) the ALJ's finding of plaintiff's RFC was not based on substantial evidence, and (4) the ALJ failed to weigh the medical opinions of record properly. Doc. 14 at 1. The Commissioner maintains that the Appeals Council properly declined review, that the ALJ

properly weighed the evidence, and that the decision is supported by substantial evidence. Doc. 15.[4]

**V.     Discussion**

1.     Appeals Council Decision

Plaintiff argues that this case should be remanded because the Appeals Council failed to review plaintiff's case based on additional evidence that plaintiff submitted after the ALJ's decision—specifically, (a) a medical source statement from Dr. Tyler Hall, dated August 31, 2018; (b) a residual functional capacity report from Dr. Paola Bass, dated October 9, 2018; and (c) a medical source statement from Dr. Paola Bass, dated October 24, 2018.

The court "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." *Ingram*, 496 F.3d at 1258. Evidence is properly presented if the evidence is "new and material," and it relates to "the period on or before the date of the hearing decision." *See* 20 C.F.R. § 416.1470(a)(5); *Russell v. Astrue*, 742 F. Supp. 1355, 1382 (N.D. Ga. 2010) (citing *Smith v. Soc. Sec. Admin.*, 272 F. App'x, 789, 800-02 (11th Cir. 2008)). The Appeals Council must review a case if properly presented new evidence shows that "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a). However, if the Appeals Council denies a request for review, it is "not required to provide a detailed

---

[4] The defendant appears to have filed two identical briefs, *see* Docs. 15, 20, and two identical administrative transcripts, *see* Docs. 16, 21. For the purpose of this court's review, the court relies on the first-filed version of each document.

discussion of the new evidence or an explanation as to why the claimant's new evidence would not change the ALJ's decision." *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 863 (11th Cir. 2019) (citing *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771, F.3d 780, 784-85 (11th Cir. 2014)). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

In the instant case, plaintiff submitted three additional pieces of evidence to the Appeals Council that were not before the ALJ. The letter from Dr. Tyler Hall notes that plaintiff's best corrected visual acuity was 20/300 in the right eye, and 20/50 in the left eye. Doc. 16-2 at 21; R. 20. The residual functional capacity report from Dr. Paola Bass indicates that plaintiff can sit for 2 hours at one time for a maximum of 4 hours; occasionally lift and carry 6-10 pounds; frequently use both arms and hands to push and pull; occasionally use his right foot and leg to push and pull; frequently use his left foot and leg to push and pull; occasionally bend, squat, crawl, reach, and use his hands for fine manipulation and handling; and frequently use his hands for simple grasping. *See* Doc. 16-2 at 16-20; R. 15-18. The medical source statement from Dr. Paola Bass states that plaintiff is "permanently disabled" and has diagnoses of long term illnesses "which prohibit him from being gainfully employed." Doc. 16-2 at 24; R. 13. This statement explains that plaintiff is at "increased risk of infections even with limited exposure to germs," he has limited ability to "be exposed to even minor stress," he "has severe allergic reactions when exposed to new environments," and he "cannot be exposed to dust, as this sometimes

causes pneumonia." *Id.* Plaintiff asserts that these "uncontroverted medical opinions would likely change the administrative proceeding." Doc. 14 at 18.

The administrative record in this case makes it clear that the Appeals Council accepted the additional evidence submitted by plaintiff but found that it did not present a reasonable probability of changing the outcome of the ALJ's decision. *See* Doc. 16-2 at 3; R. 2. While it falls upon the court to determine whether new evidence properly presented to the Appeals Council renders a denial of benefits erroneous by examining whether the decision is supported by substantial evidence, the court does not reach this argument, as the Commissioner's decision is due to be reversed and remanded, as outlined below.

    2.       Requirements of Listing 8.05

Plaintiff argues that the ALJ failed to consider Listing 8.05 for Atopic Dermatitis properly because the record evidence reflects that plaintiff met or equaled the listing in 2010. Doc. 14 at 19. Plaintiff cites to several medical reports between March and June of 2010 which note various skin lesions; summarize the treatment that plaintiff received, including antibiotics and wet wraps; and describe plaintiff's flareups and responses to treatment. *Id.* at 19; *see also* Doc. 16-12 at 16-32; R. 600-616.

A plaintiff is disabled if his or her impairment meets or equals a Listing. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. §§ 404.1525(a)-(d)). "To 'equal' a Listing, the medical findings must be 'at least equal in

9

severity and duration to the listed findings," *Id.* at 1224 (citing 20 C.F.R. § 404.1526(a)). A claimant's impairments must meet or equal *all* of the specified medical criteria in a particular Listing for the claimant to be found disabled at step three. *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990). An impairment manifesting only some of the criteria does not qualify, no matter how severe. *Id.* at 530. It is a claimant's burden at step three to prove disability. *Id.* at 532-33. The burden is a heavy one because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* at 532.

The ALJ explicitly found that "[t]he claimant's dermatitis does not meet or equal list 8.05 with record of extensive skin lesions of the stated duration persistent despite therapy." Doc. 16-2 at 28; R. 27. The Commissioner argues that the ALJ's determination was supported by substantial evidence, and that even if plaintiff were able to show that he meets the requirements of Listing 8.05, he would additionally have to show that he meets the requirements of Listing 8.00(C) which defines extensive skin lesions and indicates the frequency of flareups which should be considered. Doc. 20 at 9-10. The Commissioner maintains that the evidence put forth by plaintiff indicates that he met neither the severity nor frequency requirements of those listings. *Id.* at 10.

Listing 8.05 provides for an award of benefits based on dermatitis. Specifically, the Listing states:

> **8.05 *Dermatitis*** (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed.

20 C.F.R. pt. 404, subpt. P, app. 1, § 8.05. Listing 8.00(C) describes extensive skin lesions as follows:

> Extensive skin lesions that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in very serious limitation include but are not limited to:
>
> a.  Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
> b.  Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
> c.  Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. pt. 404, subpt. P, app. 1, § 8.00(C). To determine whether frequent flareups of skin lesions not meeting the requirements of the Listing – for instance, with periods of remission – may qualify as an impairment, the ALJ may consider how "frequent and serious" the flareups are, how quickly they resolve, and how an individual functions between flareups, "to determine whether [an applicant has] been unable to do any gainful activity for a continuous period of at least 12 months or can be expected to be unable to do any gainful activity for a continuous period of at least 12 months." 20 C.F.R. pt. 404, subpt. P, app. 1, § 8.00(C)(2).

Plaintiff has not met his burden of showing that he meets the requirements of Listing 8.05 because the record evidence does not show that plaintiff had "extensive skin lesions" as defined in the regulation, nor did plaintiff show that he was unable to do any gainful activity for a period of 12 continuous months, either prospectively or in the past. The court therefore finds that the ALJ properly considered Listing 8.05, and the decision was not in error in this regard.

3.        Residual Functional Capacity Determination

Plaintiff argues that the ALJ's RFC finding was not based on substantial evidence because the ALJ inferred that plaintiff was able to perform medium work despite a prior restriction indicated in plaintiff's medical records, and because the ALJ reached inconsistent conclusions about plaintiff's visual constriction. Doc. 14 at 21-22.

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 416.946(c). Such "assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546). The ALJ, not the physician, is charged with assessing a claimant's RFC at the administrative level. *See* 20 C.F.R. §§ 416.927(d)(2), 416.946(c); *see also Castle v. Colvin*, 557 F. App'x 849, 853–854 (11th Cir. 2014) (finding that ALJ "properly carried out his regulatory role as an adjudicator responsible for assessing [the plaintiff's] RFC"). The determination of a claimant's RFC is an administrative assessment, not a medical one, and the final responsibility for assessing a claimant's RFC rests with the ALJ. *See* 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3), 416.946(a); SSR 96-8p, 1996 SSR LEXIS 5, at *13 (July 2, 1996); *Castle*, 557 F. App'x at 853. Although an ALJ may not make medical findings, *see Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992), it is the ALJ's responsibility to resolve conflicting medical opinions and evidence. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984). The ALJ, "as the factfinder, does not need an opinion from a treating or examining doctor concerning a claimant's functional limitation[s] in order to make a finding regarding a claimant's RFC." *Williams v. Astrue*, 2008 U.S. Dist. LEXIS 12010, at *15 (M.D. Fla. Feb.

18, 2009). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). It is not this court's role to reweigh the evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that [the plaintiff] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.") (internal quotations and footnotes omitted).

      The ALJ's decision evaluated the plaintiff's testimony regarding his vision – that is, his treatment history and his visual impairments, including intermittent constriction of his right eye. Doc. 16-2 at 29; R. 28. The ALJ determined that plaintiff's visual impairments did not result in disabling functional limitations despite the fact that plaintiff's vision continued to require regular management for vision problems and tearing. *Id.* Likewise, the ALJ reviewed evidence about the plaintiff's need for ongoing treatment for dermatitis and his history of asthma in considering other environmental limitations on plaintiff's RFC. *See* Doc. 16-2 at 28-30; R. 27-29. Plaintiff points to postoperative instructions issued by Callahan Eye Hospital on October 17, 2017, instructing plaintiff not to lift anything heavier than 10 pounds, and asserts that there are no indications that this restriction was ever lifted. Doc. 14 at 21. The Commissioner maintains that the restriction appears to be a temporary restriction imposed immediately after eye surgery, that no other treating or examining

physician indicated any other physical limitations during the relevant period, and that plaintiff was able to perform activities such as attending church and community college and hanging out with friends that were inconsistent with additional limitations. Doc. 15 at 11. However, the ALJ did not explicitly mention any basis for finding that plaintiff's RFC exceeded the restrictions imposed by Callahan Eye Hospital, and there is no basis in the record for the court to find that substantial evidence supports the ALJ's RFC determination with respect to plaintiff's ability to stoop, strain, bend, or lift over 10 pounds. The ALJ's decision with regard to the RFC is therefore due to be reversed and remanded.

    4.    ALJ's Weighing of Medical Records

Plaintiff argues that the ALJ's decision is erroneous because the ALJ summarized the medical records and failed to state the weight she accorded to any medical provider. The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when the treating physician's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating physician's opinion was conclusory or inconsistent with his or her own medical records. *Id.* at 1241. The Commissioner must specify what weight is given to a treating physician's opinion, and any reason for giving it no weight at all. *See MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986) (citations omitted). Failure to do so is reversible error. *Id.* As this court has explained:

> Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011),

> the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit states that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of a treating physician constitutes reversible error).

*Rudolph v. Berryhill*, 2018 U.S. Dist. LEXIS 51177, at \*\*13-14 (M.D. Ala. Mar 28, 2018) (quoting *Albery v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 91829, at \*7 (M.D. Fla. June 7, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 91832 (M.D. Fla. July 3, 2012), and citing *Winschel*, 631 F.3d at 1179).

In this case, the ALJ summarized information about plaintiff's treatment history and made a determination about what plaintiff can and cannot do without specifically addressing the weight given to the opinions of various medical sources. While the Commissioner argues that the ALJ "properly considered the relevant factors including: the examining relationship, whether the opinion is well-supported; consistency with the record; and specialization," Doc. 15 at 12-13, controlling law requires an ALJ to state with particularity the weight given to opinions and the reasons therefor, not merely to consider them. Under these circumstances, the court must remand this matter for additional proceedings. *See Ingram*, 496 F.3d at 1260 ("The [Commissioner]'s failure to apply the

15

correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (bracketed text in original); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991) (the ALJ errs as a matter of law if the written decision lacks enough information for the court to review the ALJ's findings to ensure that proper legal standards were employed and that the factual findings are based on substantial evidence). The ALJ must expressly articulate the weight given to each medical opinion and the underlying reasons supporting such decision so that, if another appeal follows, a reviewing court can assess whether proper legal standards were applied.

## VI.   Conclusion and Order

For the reasons explained above, the decision of the Commissioner will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so that the Commissioner can conduct additional proceedings consistent with this opinion. The court does not reach plaintiff's arguments that are not expressly discussed herein. On remand, the court expects that the Commissioner will consider plaintiff's arguments as to those issues as well and will develop the record as is necessary in areas not expressly considered in this opinion.

Done, on this the 9th day of September, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge